IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL BULLOCK, an individual, | Case No.: |
| Plaintiff, | |
| vs. | VERIFIED COMPLAINT |
| JESSICA DOE and JOHN DOES I-XX, | Jury Trial Demanded |
| Defendants *in personam*, | |
| - and - | |
| 119,873.29 U.S. DOLLAR COIN and 119,873 TETHER VIRTUAL CURRENCY, | |
| Defendants *in rem*, | |
| - and - | |
| BAM MANAGEMENT US HOLDINGS INC.; BAM TRADING SERVICES, INC. d/b/a Binance.US; PAYWARD VENTURES, INC. d/b/a Kraken; CIRCLE INTERNET FINANCIAL, LLC d/b/a Circle; and TETHER OPERATIONS LIMITED d/b/a Tether, | |
| Relief Parties and Garnishees. | |

**COMES NOW** the Plaintiff, Michael Bullock, by and through his undersigned counsel

Joseph R. Casey of Harding Law Offices, and sets forth his Complaint against Defendant Jessica

Doe ("Jessica Doe"); Defendants John Does I-XX (collectively "John Doe Defendants"); and *In

Rem* Defendants 119,873.29 U.S. Dollar Coin ("USDC Defendant") and 119,873.29 Tether Virtual

Currency ("USDT Defendant"); and Relief Parties and Garnishees BAM Management US

Holdings Inc. ("Binance Parent"), BAM Trading Services, Inc. d/b/a Binance.US ("Binance.US"),

and Payward Ventures, Inc. d/b/a Kraken ("Kraken") as follows:

Case 3:23-cv-03041-CJW-KEM   Document 1   Filed 10/19/23   Page 1 of 30

## NATURE OF THE ACTION

1. This is a civil action arising under 18 U.S.C. § 1962 et seq. and multiple tortious acts in violation of Iowa statutory and common law.

2. This matter stems from Defendants' theft of $119,873.29 worth of digital assets (a type of cryptocurrency called "stablecoins") held by Plaintiff. All of the virtual assets, based on the Ethereum blockchain, were converted from Plaintiff in the form of the U.S. Dollar Coin (USDC) stablecoin and – through a process of fraudulent conveyances – swapped by Defendants for an equivalent amount of the Tether stablecoin (USDT)

3. The theft occurred through an increasingly common and sophisticated fraudulent scheme known as a "pig-butchering scam," wherein victims such as Plaintiff are "fattened" for financial "slaughter" by tricking the victim into giving cryptocurrency to the scammer through the creation of a website designed to mimic a legitimate cryptocurrency exchange.

4. Plaintiff was one victim of a scheme causing more than $3.3 billion ($3,300,000,000.00) in financial losses in 2022, according to the Federal Bureau of Investigation. Consumer losses have been staggering, generating extensive media attention.[1]

5. The Defendants took numerous measures to obscure the resulting transaction trail left behind on the Ethereum blockchain.

6. Plaintiff's investigation has led it to initiate recovery actions in the United States, where recovery of the stolen assets may be affected, as Defendants currently possess or control all or a significant portion of Plaintiff's stolen property or proceeds therefrom through their

---

[1] See, for example, Lily Hay Newman, "'Pig Butchering' Scams Are Now a $3 Billion Threat." *Wired Magazine* (9 March 2023) (available at https://www.wired.com/story/pig-butchering-fbi-ic3-2022-report/ as of 27 May 2023).

accounts at the cryptocurrency exchanges operated by relief parties and garnishees Binance.US and Kraken.

7. Plaintiff's case is particularly unusual because the Defendants have not ceased all communications with Plaintiff (as is the usual practice with pig-butchering scams) as the Defendants do not yet know Plaintiff has determined that he has been scammed or located his stolen assets. This case, therefore, poses unique potential for a rare recovery on behalf of a victim subsequent to the appropriate injunctive relief (a related motion to be filed separately from this Complaint).

**PARTIES, JURISDICTION, AND VENUE**

8. Plaintiff Michael Bullock ("Bullock") is a natural person residing in Green, Butler County, Iowa.

9. Defendant Jessica Doe is an individual whose true residence is unknown. Plaintiff will attempt to identify Defendant Jessica Doe through discovery served on known third parties with whom Defendants interacted and through additional investigation of the theft and subsequent transfers of the stolen assets. As of the date of this Complaint, Plaintiff has information and reason to believe Defendant Jessica Doe is a resident of the Republic of Turkey.

10. John Doe Defendants I-XX are individuals of unknown residence who, upon information and belief, assisted Defendant Jessica Doe in perpetuating the wrongdoing alleged herein. Plaintiff will attempt to identify Defendants John Doe I-XX through discovery served on known third parties with whom Defendants John Doe I-XX interacted and through additional investigation of the theft and subsequent transfers of the stolen assets. As of the

date of this Complaint, Plaintiff has information and reason to believed Defendants John Doe I-XX are residents of the Republic of Turkey.

11. Defendant *in rem* 119,873.29 U.S. Dollar Coin is an ERC-20 cryptocurrency native to the decentralized blockchain Ethereum.

12. Defendant *in rem* 119,873 Tether Virtual Currency is an ERC-20 cryptocurrency native to the decentralized blockchain Ethereum.

13. Garnishee and Relief Party BAM Management US Holdings Inc. ("Binance Parent") is the parent company of Garnishee and Relief Party BAM Trading Services, Inc. d/b/a Binance.US. Binance Parent is a company incorporated in Delaware with a headquarters at One Letterman Drive, Building C, Suite C3-800, San Francisco, California, 94129 with a registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

14. Garnishee and Relief Party BAM Trading Services, Inc. ("Binance.US") is a company incorporated in Delaware with a headquarters at One Letterman Drive, Building C, Suite C3-800, San Francisco, California, 94129 with a registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

15. Garnishee and Relief Party Payward Ventures, Inc. d/b/a Kraken ("Kraken") is a company incorporated in Delaware with a headquarters at 237 Kearny St., #102, San Francisco, California, 94018, with a registered agent of The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

16. Garnishee and Relief Party Circle Internet Financial, LLC d/b/a Circle ("Circle") is a Delaware limited liability company with a headquarters at 99 High Street, Suite 1701,

Boston, Massachusetts, 02110, with a registered agent of The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

17. Defendant Tether Operations Limited d/b/a Tether ("Tether") is an entity organized under the laws of the British Virgin Islands. Tether Operations Limited operates Tether's website and token platform (tether.to) to store, send, and make purchases of Tether tokens (USDT). Tether may be served process through its registered agent, SHRM Trustees (BVI) Ltd. Trinity Chambers, Road Town, Tortola, British Virgin Islands. Tether also uses P.O. Box 4301 at the same address.

18. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims include a cause of action pursuant to 18 U.S.C. § 1964(a).

19. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest, cost and attorneys' fees, and is an action between citizens of different states or subjects of foreign states.

20. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21. Jurisdiction and venue are proper in the Northern District of Iowa because the conduct giving rise to this action – including the Defendants' inducement of Plaintiff to transfer assets which Defendants used as part of their tortious schemes – was directed towards an Iowa plaintiff in Butler County, Iowa; and as a result of Defendants' conduct, directed and induced Plaintiff to use accounts at a financial institution in Charles City, Floyd County, Iowa and execute wire transfers of funds from their location in Floyd County to the Defendants; the harms and damages suffered by the plaintiff are felt here in Iowa and have a substantial impact on the economy and people of Butler County, Iowa and the State of

Iowa; the scheme involved Defendants' representation that they had made travel arrangements to and through the State of Iowa and had other connections to the state; and the Defendants' scheme made use of telephonic and electronic communications available to Plaintiff in Iowa. Jurisdiction is also proper over Relief Parties and Garnishees because those entities have actual control of the mechanism of harm in this matter (i.e., the cryptocurrency converted and swapped); and, upon information and belief, sell or facilitate the sale of significant amounts of USDC and USDT tokens to Iowans in the Northern District through the exchanges on which those tokens are listed.

## FACTUAL BACKGROUND

22. On or before 1 April 2023, Plaintiff accepted a Facebook "friend request" from an individual who held herself out as "Xin Jessica Li" (hereinafter "Defendant Jessica Doe"). Plaintiff accepted the "friend request."

23. On or about 6 June 2023, Defendant Jessica Doe contacted Plaintiff via Facebook Messenger, an in-platform messaging application, and suggested to Plaintiff that he and Defendant Jessica Doe should "get to know each other." Defendant Jessica Doe proposed using Meta Platforms' WhatsApp messaging application for these purposes, and Plaintiff complied. Defendant Jessica Does' WhatsApp account showed a phone number (the sole identifier tied to WhatsApp accounts and the sole piece of data needed for establishing an account) of 646-374-9789.

24. Between 1 June 2023 and 16 October 2023, Defendant Jessica Doe and Plaintiff built a relationship and became friends, messaging each other every day on WhatsApp. Defendant Jessica Doe even made plans to visit Plaintiff in Iowa, as she was familiar with the state.

25. On or about 1 July 2023, Defendant Jessica Doe stated to Plaintiff that she had an interest in cryptocurrency and that she was a successful amateur trader of cryptocurrency-based options contract. She further represented that her success was due to information leaked by her godmother, a purported insider and analyst at an options trading firm. This information piqued Plaintiff's interest, despite having no personal experience in purchasing, owning, or trading cryptocurrency.

26. On or about 5 July 2023, Defendant Jessica Doe offered to teach Plaintiff how to purchase options contracts with the goal of making profits which would help Plaintiff reach his personal financial goals.

27. On or about 13 July 2023, at Defendant Jessica Doe's direction and inducement, Plaintiff opened an account at Foris DAX Asia Pte. Ltd. and its subsidiaries (commonly known as [www.crypto.com](www.crypto.com) and hereinafter "Crypto.com"), a major cryptocurrency exchanges which offer accounts to U.S. customers.

28. Between 4 August 2023 and 5 October 2023, at Defendant Jessica Doe's direction and inducement, Plaintiff made the following interstate wire transfers of U.S. dollars from his checking account at First Security Bank in Charles City, Iowa to his account at Crypto.com via an intermediary bank, Community Federal Savings Bank:

    a. $45,000.00 in Wire Sequence 7506 on 4 August 2023;

    b. $15,000.00 in Wire Sequence 7558 on 28 August 2023;

    c. $34,000.00 in Wire Sequence 7597 on 13 September 2023; and

    d. $26,000.00 in Wire Sequence 7660 on 5 October 2023

    For a total amount of $120,000.00

29. At the direction and inducement of Defendant Jessica Doe, Plaintiff also borrowed private funds and liquidated his 401(k)-retirement account in order to secure funds which he later traded for cryptocurrency.

30. At the direction and inducement of Defendant Jessica Doe, Plaintiff exchanged his U.S. Dollars into U.S. Dollar Coin, the cryptocurrency native to the Ethereum blockchain and abbreviated on cryptocurrency exchanges as "USDC."  USDC is created and maintained by Relief Party and Garnishee Circle.

31. USDC, like another cryptocurrency mentioned herein (USDT or "Tether"), is a "stablecoin," is a type of fungible token (electronic coin or digital asset) that exists on a blockchain as a digital medium of exchange. USDC and USDT are "stable" coins insofar as its developers and managers purport to maintain their value tied or pegged to a "reference asset." In the case of USDC and USDT, the reference asset is the United States' own currency, the U.S. dollar. One USDC or USDT is worth, more or less, one US dollar. USDT is created and maintained by Relief Party and Garnishee Tether.

32. Defendant then Jessica Doe assisted Plaintiff in executing his own options contracts or cryptocurrency trades on a purported cryptocurrency exchange called Zaifint (also branded Zaif INT), which uses the domain www.zaifint.com.



*Figure 1 -*
*A screenshot of the home page for the Zaifint fake exchange interface*

33. The Zaifint interface is also available on application stores for download to iPhone and Android. Its listed publisher is "Ardaa Eskici," which, upon information and belief, is a pseudonym used by the John Doe defendants.



*Figure 2 –*

*A screenshot of Zaifint as it appears on Apple's App Store*

34. As she did throughout the remainder of her interaction with Plaintiff, Defendant Jessica Doe gave Plaintiff step-by-step instructions by sending to Plaintiff screenshots of her phone with boxes (made using a hand-drawn feature to superimpose lines and shapes onto photos and screenshots) showing Plaintiff which buttons she wanted him to click.

35. Defendant Jessica Doe provided step-by-step instructions for Plaintiff to execute each trade by performing transactions on the Ethereum blockchain.

36. Each transaction Plaintiff completed involved sending certain amounts of USDC to several destinations (a unique string of letters and numbers commonly known as "addresses") capable of receiving cryptocurrency on the Ethereum blockchain.

37. Defendant Jessica Doe provided these addresses to Plaintiff and represented that the addresses belonged to the Zaifint platform.

38. To induce large deposits from Plaintiff, Defendant Jessica Doe represented to Plaintiff that she deposited $150,000.00 worth of USDC into an Zaifint account on his behalf, which he could repay after a period of successful trading.

39. Defendant Jessica Doe then provided step-by-step instructions and supervised Plaintiff in making six (6) transactions (12 July 2023; 25 July 2023; 4 August 2023; 28 August 2023; 13 September 2023; and 5 October 2023, sending specific amounts of USDC from Plaintiff's account at Crypto.com to the purported Zaifint Ethereum addresses. Those six transfers are reflected in the Cryptocurrency Forensic Expert Report prepared by Plaintiff's cryptocurrency forensic expert, attached to this Exhibit as **Exhibit A**.

40. After Plaintiff completed each transaction, Defendant Jessica Doe showed Plaintiff a display on Zaifint which purported to reflect that Plaintiff earned a sizeable profit on each trade.

41. In reality, the Ether Plaintiff sent to Defendant Jessica Doe went directly into addresses controlled by Defendant Jessica Doe and/or the John Doe Defendants. Zaifint did not and does not exist as a legitimate website, investment platform, or cryptocurrency exchange.

42. Plaintiff lacked the technological sophistication to verify the owner of the addresses to which he was sending USDC, learn about the operator of Zaifint, or detect that Zaifint was neither a real website nor a legitimate cryptocurrency exchange.

43. On the date of each transaction, the U.S. dollar value of the approximately 119,957.69 USDC Plaintiff sent to the addresses specified by Defendant Jessica Doe totaled $119,957.69.

44. By October 2023, Plaintiff believed his "trades" on Zaifint had grown to over $917,000 worth of cryptocurrency and earned him a substantial profit.

45. As early as 17 June 2023, Defendant Jessica Doe had assisted Plaintiff in contacting persons she represented worked for the fake Zaifint exchange through Zaifint's account Telegram, an instant messaging service, and helped him ask those persons to help Plaintiff deposit, manage, and eventually seek the return of Plaintiff's crypto to his Crypto.com account. Zaifint.com's website and Defendant Jessica Doe directed Plaintiff to the same Telegram account.

46. Through Zaifint's Telegram account, a purported representative (or team of representatives) from Zaifint conveyed an extortionary threat to Plaintiff, represented to Plaintiff that it would not release his funds until he submitted to Zaifint confidential, personally-identifying information; three months of bank statements; and made an addition transfer of 10% of the value of crypto he believed he had deposited and earned with Zaifin, or approximately $91,700.00 extra.

47. When Plaintiff declined to tender additional funds to Zaifint and demanded the return of his digital assets or their U.S. dollar equivalent, the Zaifint representative(s) told Plaintiff that his account had been frozen, his funds seized or otherwise inaccessible, and threatened to harm his consumer credit rating. Zaifint and Jessica Doe have since refused to return Plaintiff's funds.

48. After these interactions, Plaintiff has discovered that Defendant Jessica Doe and the Zaifint representatives had perpetrated against him a new and sophisticated version of an online scheme known as a "pig-butchering scam" according to the following model:

   a. One or more cybercriminals hiding behind entirely fabricate online personas form an extended, emotional relationship with their intended victim over an instant messaging application;

b.  After months of building trust with their victim (or "pig"), the scammer introduces him to the concept of generating income through trading cryptocurrency and guiding the victim through steps required to send money to the scammer's Ethereum addresses;

c.  Relying on their victim's emotional dependence and lack of technical sophistication, the scammer shows their victim a website designed to look like a legitimate cryptocurrency exchange, but whose domain, interface, and features they control;

d.  The scammer then uses this website to excite the victim with legitimate-looking charts and diagrams which reflect the victim's purported trades and profits;

e.  In reality, each transaction in which the victim believes they are sending USDC to an exchange goes directly into the scammer's private addresses, after which the scammer performs a rapid series of transfers between other addresses controlled by the scammer in an attempt to disguise the final address holding the stolen Ether;

f.  Once the scammer has convinced the victim that their financial goals have been made possible by the fake exchange, the scammer "butchers" their victim by demanding (through the exchange's chat function) one final payment;

g.  Whether or not the victim makes an additional payment, the scammer keeps all of the victim's funds and vanishes from the instant messaging platform used to communicate with the victim. The scammer may even threaten the victim in an attempt to coerce further payment.

49. Upon information and belief, Defendants John Doe I-XX participated in this scheme to defraud Plaintiff by:

a.  assisting Defendant Jessica Doe by participating in communication with Plaintiff under the name "Jessica" and facilitating her scheme against him;

b.  providing images which they represented showed Defendant Jessica Doe;

c.  operating the cryptocurrency addresses used in the scam and the wallets containing those addresses;

d.  operating and funding the telephone number used in the scam;

e.  operating a Facebook account used to perpetuate the scam;

f.  operating the WhatsApp account used to perpetuate the scam;

g.  operating a Telegram account used to perpetuate the scam;

h.  building, funding, and operating a website for the fake cryptocurrency exchange website known as Zaifint.com;

i.  building, funding, deploying, and operating a mobile application for the fake cryptocurrency exchange website known as Zaifint.com;

j.  falsely posing as customer service representatives for a cryptocurrency exchange;

k.  transferring those funds to Binance.US and Kraken exchange accounts and swapping them for US Dollars or other fiat currencies; and

l.  otherwise engaging in tortious and illegal conduct against Plaintiff.

50. All Defendants engaged in the scheme set forth above and further explained in the Conveyances Tracing Report of Plaintiff's expert, attached to this Complaint as **Exhibit B**. This exhibit shows the way in which Defendants shuffled assets through "shell" blockchain addresses used by the Defendants to deprive Plaintiff of his digital assets and conceal their identities and the destination of the stolen assets.

51. To this day, Defendants wrongfully possess Plaintiff's assets or their fiat currency equivalent in one or more accounts controlled by Garnishees and Relief Party Binance Parent, Binance.US and Kraken and their respective Ethereum addresses:

    a. Binance Parent/Binance.US: 0x28C6c06298d514Db089934071355E5743bf21d60

    b. Kraken: 0x89e51fA8CA5D66cd220bAed62ED01e8951aa7c40

The disposition of all stolen funds into the Binance and Kraken accounts, and they path of fraudulent conveyances that they resulted in their deposit, is reflected in the Ultimate Destination Report of Plaintiff's expert, attached to this Complaint as **Exhibit C**.

52. In all, Defendants used eighteen (18) separate addresses to transfer the stolen assets, as reflected in **Exhibit D**. All of these addresses (hereinafter "Scam Addresses") are and were controlled by Defendants Jessica Doe and John Does I-XX:

    a. The addresses used to convert funds ("Scam Addresses"):

| ADDRESS SHORTHAND | ETHEREUM ADDRESS |
|---|---|
| Scam Address A | 0x5B93AadBd3e507BF2e3a68e8CD760C82fBA541f1 |
| Scam Address B | 0x3aC79DA68CC906240f4C62D7B2bfe64Fb992e22c |
| Scam Address C | 0x5095CBfc0ff59E63745Ea01f5a722f9d7564b4f6 |
| Scam Address D | 0x3CEab17d3Fb1ee10E8424Ca2b649C54a0643ED88 |
| Scam Address E | 0x1EA6c03601BA054441709A4a345AddC05937FD9C |
| Scam Address F | 0xd492e57806c0ABd3F0932205C5BB3086aaE49778 |
| Scam Address G | 0x68b66ce34DA6bF45110E0064F232acbD8e7a5531 |
| Scam Address H | 0x7d7c4ddDF9188D0c170d438d08Eb94370c588630 |
| Scam Address I | 0x9078B13962FBC7d93f624Ab9395d60Ff332A9aF9 |
| Scam Address J | 0xd6d47Fcea370D6fBD78DE05e458BCC5D2d38c390 |
| Scam Address K | 0x25B903719548E94CB58907a0Db4461FfD61DEEb6 |
| Scam Address L | 0x5eA884cAf25A9D2B9fb1033cDD5300BD40c5d223 |
| Scam Address M | 0xEF09458B37F83d97077dC5dD54Fa42cef06bC14b |
| Scam Address N | 0xcce5D11cC48eb1671a6E36829575578d2d4CcA48f |
| Scam Address O | 0xe997bfc0f7A6FD834176B0C92EB845B6696b8d09 |
| Scam Address P | 0xf44edc33a3c96E7e74cE9284A04Db0d8Af7eCA4c |
| Scam Address R | 0x34AA48E296273872649Ef8D3782813fE9a77dc72 |

b. Of the above-referenced addresses, Defendants used six (6) Scam Addresses (A, B, J, K, N, and R) as "primary wallets," meaning that they were the first addresses used to receive the Plaintiff's stolen funds in a transaction with Plaintiff.

c. Of the above-referenced addresses, Defendants used twelve (12) Scam Addresses (C, D, E, F, G, H, I, L, M, O, and P, and Q) as "sub-addresses," meaning that they were not the first addresses used to receive Plaintiff's stolen crypto in a transaction with Plaintiff but were instead transactions from one address controlled by the Defendants to another address used by the Defendants.

d. The Defendants used sub-addresses to fraudulently transfer funds between multiple shell addresses controlled by Defendants and, ultimately, to the Defendants' Binance Parent / Binance.US and Kraken exchange account(s) and conceal the theft and destination of funds.

e. The stolen crypto controlled by Defendants' accounts at Binance Parent / Binance.US and Kraken are currently in the form of Tether (USDT) which the Defendants obtained by swapping Defendants' stolen crypto on the Ethereum blockchain, including by interacting with a fraudulent smart contract and Tokenlon, a decentralized exchange.

53. In all, Defendants stole 119,873.29 USDC from Plaintiff worth approximately $119,873.29, through their shell transactions, swapped them for 119,873 USDT. The latter rests in Defendant's accounts at Binance Parent / Binance.US and Kraken.

54. A full accounting of Defendant's fraudulent transfers aimed at concealing the origin, journey, and destination of Plaintiff's stolen crypto is contained in the Conveyances Tracing Report of Plaintiff's expert, attached to this Complaint as **Exhibit B**.

55. Aside from the objective and permanent record available on the Ethereum blockchain (which proves the transactions in question), Plaintiff's evidence – demonstrating the Defendant's conduct, electronic communications, intent to defraud using electronic wires and bank transfers – consists of more than 4,000 distinct screenshots and preserved WhatsApp transcripts.

56. Defendants do not yet know that Plaintiff has uncovered their scheme, located the stolen assets, and identified exchanges used by Defendants.

**FIRST CAUSE OF ACTION**
**CONVERSION**
**(Defendants Jessica Doe and John Does I-XX)**

57. Plaintiff hereby incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

58. On or about 5 October 2023, Defendants refused to return Plaintiff's funds when, posing as customer service representatives for the fake exchange known as Zaifint, they told Plaintiff his funds would only be released if he paid additional funds directly to Defendants.

59. Plaintiff owns and has a possessory right to the 119,873.29 USDC and 119,873 USDT retained by Defendants.

60. Defendants have no rightful ownership or possessory interest in Plaintiff's 119,873.29 USDC and 119,873 USDT.

61. Defendants wrongfully maintain possession and dominion over Plaintiff's 119,873.29 USDC and 119,873 USDT.

62. Defendants' possession of Plaintiff's 119,873.29 USDC and 119,873 USDT wrongfully deprives Plaintiff of the benefits of his property.

63. Defendants' possession of Plaintiff's 119,873.29 USDC and 119,873 USDT is inconsistent with, and in derogation of, Plaintiff's ownership and possessory rights.

64. Defendants' possession of Plaintiff's 119,873.29 USDC and 119,873 USDT is in willful and wanton disregard for the rights of Plaintiff. Defendants lack any good faith claim to Plaintiff's funds.

65. Through its continued possession, Defendants have converted Plaintiff's property.

66. As a result of Defendants' tortious conduct, Plaintiff has suffered damages and continues to suffer damages.

**SECOND CAUSE OF ACTION**
**RACKETEERING**
**18 U.S.C. § 1962(C)**
**(Defendants Jessica Doe and John Does I-XX)**

67. Plaintiff hereby incorporates by reference paragraphs 1-52 and of 54-62 of this Complaint as though fully set forth herein.

68. Defendants Jessica Doe and John Does I-XX are a group of individuals that were and are engaged in interstate commerce and are associated in fact for the common and shared purpose of (1) profiting by exchanging cryptocurrency assets on cryptocurrency exchanges, while also engaged in criminal acts; (2) operating a fraudulent enterprise designed to steal digital assets from Plaintiff after convincing him to send those digital assets to a fake cryptocurrency exchange controlled by Defendants; (3) funneling those funds into a series of Ethereum addresses to hide the origin and destination of those stolen assets; (4) then using those stolen assets in otherwise legitimate cryptocurrency trading; (5) maintaining their activities and enterprise through a series of specific threats of financial or reputational harm, leaving victims in an ongoing state of fear for the safety of their person, reputation, identity and financial condition.

69. Defendants Jessica Doe and John Does I-XX operated (and continue to operate) the enterprise together.

70. Defendants Jessica Doe and John Does I-XX each participated in the operation and management of the enterprise with the goal of accomplishing the same common and shared purpose.

71. Ethereum ledger transaction records from the Defendants Jessica Doe and John Does I-XX reveal that Plaintiff was far from the first victim of their scheme. In fact, one of the Defendants' addresses alone, Scam Address I has received and sent more than $6,200,000.00 worth of cryptocurrency to the Defendant's Binance and Kraken accounts in the past 18 months. Moreover, the Scam Addresses continue to show the proceeds of this relentless enterprise stealing crypto from other victims. **Exhibit E** to this Complaint shows the amount of cryptocurrency present in each Scam Address as of 16 October 2023 and the last time the address was actively used for ERC-20 transactions. Some were used as recently as 16 October 2023.

72. As alleged in detail through this Complaint and its exhibits, Defendants Jessica Doe and John Does I-X, intentionally and knowingly engaged in a pattern of racketeering activity that included transmissions by means of wire, radio, or television communication with intent to defraud.

73. As alleged in detail through this Complaint and its exhibits, Defendant Jessica Doe and John Does I-XX, knowingly and intentionally engaged in a pattern of racketeering activity that included in engaging in monetary transactions in property derived from specified criminally obtained property and unlawful activity.

74. As alleged in detail through this Complaint and its exhibits, Defendants Jessica Doe and John Does I-XX knowingly and intentionally engaged in a pattern of racketeering activity that included conducting financial transactions with the intent to promote the carrying-on of specified unlawful activity and/or to conceal or disguise the nature, location, source, ownership, and proceeds of specified unlawful activity.

75. As alleged in detail through this Complaint and its exhibits, Defendants Jessica Doe and John Does I-XX knowingly and intentionally engaged in a pattern of racketeering activity that included engaging in monetary transactions in property derived from specified unlawful activity and investing racketeering income by using the stolen assets on a cryptocurrency exchange, trading those assets to obtain a profitable return, and obstruction of justice.

76. The conduct of Defendants Jessica Doe and John Does I-XX, by their conduct and specific written communications, threaten continued unlawful activity into the future with similar purposes, results, participants, victims, and methods of commission.

77. Other individuals – believed to be part of the same scheme recited herein and its perpetrators (Defendants Jessica Doe and John Does I-XX) – have continued to contact and attempt to contact Plaintiff to further defraud him. Plaintiff expects their efforts to persist.

78. The predicate acts conduct of Defendants Jessica Doe and John Does I-XX are not isolated events, and are part of a widespread scheme to defraud other unsuspecting victims for the same or similar purposes and to achieve the same or similar results through the same or similar methods. See, for example, **Exhibit E**, the amount of cryptocurrency from victims

other than Plaintiff, which was also funneled rapidly through the same shell accounts and eventually transferred to one or more exchange accounts.

79. Defendants Jessica Doe and John Does I-XX each had their own roles in the enterprise and maintained those roles throughout the course of the scheme, and each personally conducted the affairs of the enterprise.

80. As a foreseeable and natural consequence of the enterprise, Plaintiff has lost more than $119,000.00 worth of digital assets.

81. Plaintiff suffered other damages to his property as a result of the fraudulent scheme.

82. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to an award of three times the actual damages sustained plus the costs of this action and reasonable attorney fees.

### THIRD CAUSE OF ACTION
### CONSPIRACY TO COMMIT RACKETEERING
### 18 U.S.C. § 1962(d)
### (Defendants Jessica Doe and John Does I-XX)

83. Plaintiff hereby incorporates by reference paragraphs 1-52, 54-62 and 64-78 of this Complaint as though fully set forth herein.

84. Even if they did not direct or manage the affairs of the enterprise (which they did), Defendants Jessica Doe and John Does I-XX agreed that someone would commit predicate acts as detailed above.

85. Defendants Jessica Doe and John Does I-XX were each aware of the essential nature and scope of the enterprise, and they intended to participate in it and share its profits.

86. Plaintiff was deprived of money or property that he otherwise would not have lost but for the conduct of the Defendants.

87. As a direct and proximate cause of Defendants Jessica Doe and John Does I-XX's racketeering activities, Plaintiff has been injured through the theft of his digital assets.

88. As a foreseeable and natural consequence of the fraudulent scheme described above, Plaintiff lost more than $119,000.00 worth of digital assets.

89. Plaintiff suffered other damages as a result of the fraudulent scheme.

90. Pursuant to 18 U.S.C § 1964(c), Plaintiff is entitled to an award of three times the actual damages sustained plus the costs of this action and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Jessica Doe and John Does I-XX)

91. Plaintiff hereby incorporates by reference paragraphs 11-52, 54-62 and 64-78, and 80-86 of this Complaint as though fully set forth herein.

92. As set forth above, Defendants Jessica Doe and John Does I-XX acted negligently and tortiously with respect to Plaintiff.

93. As set forth above, Defendants invaded property and privacy interests of Plaintiff that were protected by statutory and common law.

94. As a result of Defendants' conduct, Plaintiff has suffered emotional distress damages have arisen naturally from those invasions of his protected interests.

95. As a direct and proximate result of the conduct of Defendants Jessica Doe and John Does I-XX, Plaintiff has suffered and will continue to suffer mental, emotional, and psychological injuries, including severe emotional distress.

96. Defendants Jessica Doe and John Does I-XX engaged in behavior towards Plaintiff that a reasonable person in their position would know or should have known would inflict or cause emotional distress to Plaintiff.

## FIFTH CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION
### (Defendants Jessica Doe and John Does I-XX)

97. Plaintiff hereby incorporates by reference paragraphs 11-52, 54-62 and 64-78, 80-86, and 88-92 of this Complaint as though fully set forth herein.

98. On or about 5 July 2023, Defendant Jessica Doe represented to Plaintiff that she was an experienced options trader.

99. On or about 13 July 2023, Defendant Jessica Doe represented that Zaifint was an independent website and legitimate cryptocurrency exchange where Plaintiff could safely invest funds, and that she had had substantial financial success performing the trades she would instruct Plaintiff to execute. She omitted the fact that she and/or the John Doe Defendants control Zaifint.

100. On or about 10 October 2023, Defendants John Doe I-XX represented to Plaintiff that they were members of a customer service team for a purportedly legitimate website and cryptocurrency exchange, "Zaifint.com."

101. The Defendants' above statements were false and they knew that they were false.

102. Defendants' representations were material, and Plaintiff would not have lost his funds if not for the Defendant's deceit.

103. Defendants knew their conduct was wrongful and intentionally acted despite this knowledge, or made such representations in reckless disregard of whether the representations were false.

104. Defendants engaged in the above-recited conduct in order to intentionally deceive Plaintiff into sending them his assets, and made the above representations with the intent that Plaintiff would rely on them.

105. Defendants acted out of spite, malice or ill will towards Plaintiff.

106.    As an unsophisticated party without experience in blockchain technology or investing, and as a person who genuinely believed he was in a trusting and loving relationship with Defendant Jessica Doe, Plaintiff's reliance on Defendants' representations was justifiable.

107.    Defendants' conduct was and is a direct and proximate cause of Plaintiff's losses and damages.

### SIXTH CAUSE OF ACTION
### VOIDABLE TRANSACTIONS
#### Iowa Code § 684
#### (Defendants Jessica Doe and John Does I-XX)

108.    Plaintiff hereby incorporates by reference paragraphs 11-52, 54-62 and 64-78, 80-86, 88-92, and 94-103 of this Complaint as though fully set forth herein.

109.    Each time Plaintiff sent cryptocurrency to Defendants via the transactions described above, Defendants initiated a rapid series of subsequent transactions (hereinafter "subsequent conveyances") using multiple addresses on the Ethereum blockchain.  The scam addresses and sub-addresses involved in the scheme and the fraudulent transfers are explained in detail in **Exhibits B, C, and D** to this Complaint**.**

110.    These subsequent conveyances essentially created a "shell game" in which the stolen USDC or USDT passes quickly from one Ethereum address under Defendants' control to another, typically with only momentary delay between transactions, before being shuffled into an address associated with a legitimate cryptocurrency exchange (Binance and Kraken).

111.    After Plaintiff's assets passed through each of the shell transactions described above, it finally settled in two addresses controlled by the Garnishees and Relief Parties:

    a.  Binance Parent/Binance.US: 0x28C6c06298d514Db089934071355E5743bf21d60

b. Kraken: 0x89e51fA8CA5D66cd220bAed62ED01e8951aa7c40

112.     Plaintiff's stolen cryptocurrency is traceable to these ultimate addresses as explained in **Exhibit B** and **Exhibit C**.

113.     At the moment Defendants made the subsequent conveyances, Plaintiff had legal and equitable claims to the USDC and USDT transmitted thereby.

114.     Defendants made the subsequent conveyances in a deliberate effort to disguise the ultimate destination of the stolen cryptocurrency from technologically unsophisticated parties; to avoid its obligations to Plaintiff; to hinder, delay or defraud Plaintiff's efforts to assert his legal and equitable claims; and add a façade of legitimacy to any legitimate cryptocurrency exchange with which the Defendants might interact.

115.     Defendants' conduct has no good faith defense and was done deliberately and with is a proximate cause of Plaintiff's damages.

116.     Plaintiff has incurred damages and continues to incur damages today.

117.     Iowa Code § 684.7(1)(c) permits a Plaintiff to obtain an injunction against further disposition by . . . a transferee . . . of the asset transferred . . ., as well as "any . . . relief the circumstances may require."

## SEVENTH CAUSE OF ACTION
### AIDING AND ABETTING TORTIOUS CONDUCT
### (Defendants John Does I-XX)

118.     Plaintiff hereby incorporates by reference paragraphs 11-52, 54-62 and 64-78, 80-86, 88-92, 94-103, and 105-113 of this Complaint as though fully set forth herein.

119.     Defendant Jessica Doe committed the tort of conversion and other unlawful acts (collectively, "the tortious conduct" as described throughout this Complaint), thereby causing financial and emotional injury to Plaintiff.

120. Defendants John Doe I-XX knew that Defendant Jessica Doe was going to, and in fact did, engage in the tortious conduct against Plaintiff.

121. Defendants John Doe I-XX substantially encouraged and/or substantially assisted Defendant Jessica Doe in committing the tortious conduct.

122. A causal relationship exists between the assistance and/or encouragement of Defendants John Doe I-XX and the tortious conduct of Defendant Jessica Doe.

123. Defendants John Doe I-XX personally profited and enriched themselves at the expense of Plaintiff and his assets because of the conduct of Defendant Jessica Doe.

124. The actions of Defendants Jessica Doe and Defendants John Doe I-XX were intentional and wrongful conduct motivated by spite or ill will.

125. The actions of Defendants John Does I-XX was: (a) intentional; (b) done to serve their own interests, having reason to know and consciously disregard the substantial risk that their conduct might significantly injure the rights of others, including Plaintiff; or (c) a conscious pursuit of conduct knowing that it created a substantial risk of significant harm to other persons.

126. Defendants, then, should be held jointly and severally liable.

### EIGHTH CAUSE OF ACTION
**DECLARATORY ACTION**
**(Defendants 119,873.29 U.S. Dollar Coin**
**and 119,873 Tether Virtual Currency)**

127. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

128. There is an actual and justiciable controversy between Plaintiff, Defendants, and Garnishee and Relief Party concerning the party entitled to enforce the rights of redemption represented by the USDC and USDT Defendants.

129.    As set forth above, Plaintiff is entitled to the rights of redemption represented by the USDC and USDT Defendants because Defendants obtained USDC and USDT Defendants through unlawful and tortious means.

130.    Plaintiff is, therefore, entitled to judgment declaring that Plaintiff is entitled to enforce the right of payment represented by the USDC and USDT Defendants.

131.    A declaratory judgment will serve the useful purpose of clarifying and settling the legal rights of the parties with respect to the rights of redemption and other rights represented by the USDC and USDT Defendants.  In particular, a declaratory judgment will provide essential clarity to Plaintiff in ascertaining its enforcement options in the event that it obtains a judgment against Defendants.

132.    The substantial controversy between the parties having adverse interests is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, as it is an important and effective remedy available to the parties.

133.    By reason of the foregoing, Plaintiff is entitled to judgment declaring that Plaintiff is entitled to enforce the right of payment represented by the USDC and USDT Defendants.

**NINTH CAUSE OF ACTION**
**CONSTRUCTIVE TRUST**
**(Defendants 119,873.29 U.S. Dollar Coin**
**and 119,873 Tether Virtual Currency)**

134.    Plaintiff hereby incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

135.    Iowa's Uniform Voidable Transactions Act provides that an individual with a claim to property that has been the subject of a fraudulent transfer may levy execution on the asset transferred or its proceeds, including through a constructive trust.  Iowa Code §

684.7(1)(c)(3); *see also Shea v. Lorenz*, 869 N.W.2d 196, 197 (Iowa Ct. App. 2015) (citations omitted).

136.    Plaintiff has a claim on the USDC and USDT Defendants because they constitute the crypto assets (or the proceeds thereof) which were wrongfully and unlawfully taken from Plaintiff and retained by Defendants Jessica Doe and John Does I-XX.

137.    Defendants forfeited their rights to the USDC and USDT Defendants by engaging in unlawful conduct.

138.    In principles of equity and good conscience, the rights of redemption represented by the USDC and USDT Defendants should be held in trust by the Relief Parties and Garnishees for the benefit of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

(a) Holding Defendants liable, jointly and severally, for their conduct;

(b) An award of actual damages, in amount no less than $119,873.29;

(c) An award of treble damages as permitted or required by law, in an amount no less than $359,619.87;

(d) An award of punitive damages in an amount no less than four times Plaintiff's actual losses, or $479,493.16;

(e) An award of restitution for Defendants' wrongful conduct;

(f) An award of reasonable attorneys' fees and costs;

(g) An award of interest;

(h) A judgment and award:

a. enjoining Defendants Jessica Doe and John Does I-XX against further disposition of Plaintiff's property and declaring void as a matter of law the subsequent transactions identified herein and in exhibits hereto; and

b. against Defendant 119,873.29 U.S. Dollar Coin and 119,873 Tether Virtual Currency:

   i. directing Defendants and any entity with custody or control over the assets currently in the possession or control of Defendants to transfer to Plaintiff assets substantially equivalent to the value of the stolen crypto assets, including equivalent fiat currency, and directing Relief Parties and Garnishees to assign to Plaintiff the rights of redemption represented by the USDC and USDT Defendants;

   ii. declaring that Plaintiff is entitled to enforce the rights of redemption represented by the USDC and USDT Defendants; directing Relief Parties and Garnishees to assign those rights to Plaintiff, and directing Relief Parties and Garnishees to permanently deny access to its exchange any customer or account which has received assets from any of the eighteen (18) addresses specified herein or in exhibits hereto, effectively removing the USDC and UDST Defendants from circulation;

   iii. directing Relief Parties and Garnishees to hold in trust for the benefit of Plaintiff the rights of redemption presented by the USDC and USDT Defendants and to assign to Plaintiff those rights as soon as practicable;

(i)  The creation of a constructive trust;

(j)  Disgorgement from the Defendants' accounts with Relief Parties and Garnishees, and/or from the Scam Addresses mentioned herein, of an amount of fiat currency, USDC or USDT equivalent to the US dollar value of Plaintiff's damages; and

(k)  Such other and further relief that the Court deems reasonable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted,

HARDING LAW OFFICES

/s/ Joseph R. Casey
Joseph R. Casey, Esq. (AT0014276)
1217 Army Post Road
Des Moines, Iowa 50315-5596
Telephone: (515) 287-1454
Facsimile: (515) 287-1442
joe@iowalegal.com
ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I, Michael Bullock, hereby state under oath that I have read the foregoing Complaint for *in personam* and *in rem* actions and know the contents thereof. The matters and things stated therein are true to the best of my knowledge, except those matters therein stated upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

DATED __19__ day of October 2023.

Michael Bullock

30 of 30