IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL BULLOCK, an individual, | Case No.: 3:23-cv-03041-CJW-KEM |
| Plaintiff, | |
| vs. | |
| JESSICA DOE and JOHN DOES I-XX, | |
| Defendants *in personam*, | |
| - and - | |
| 119,873.29 U.S. DOLLAR COIN and 119,873 TETHER VIRTUAL CURRENCY, | |
| Defendants *in rem*, | |
| - and - | |
| CIRCLE INTERNET INANCIAL, LLC d/b/a Circle; | |
| Relief Party and Garnishee. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ORDER AUTHORIZING ALTERNATIVEE SERVICE OF PROCESS ON FOREIGN DEFENDANTS PURSUANT TO RULE 4(f)(3)**

Case 3:23-cv-03041-CJW-KEM   Document 41   Filed 11/30/23   Page 1 of 29

# TABLE OF CONTENTS

I. PROCEDURAL STANCE ............................................................................ 3

II. INTRODUCTION ................................................................................... 3

III. STATEMENT OF FACTS ......................................................................... 4

    A. Case Background ............................................................................... 4

    B. The Virtual Impossibility of Non-Electronic Service ..................................... 5

    C. The Technology Used in the Tortious Scheme Reveals That Defendants Have Valid Means of Electronic Contact ............................................................................ 7

        1. The Technology of Non-Fungible Tokens (NFT) as a Method of Service of Process .............................................................................. 10

        2. The Mechanics of Service by NFT ............................................... 12

        3. The Mechanics of Service by Website Publication ............................ 15

IV. ARGUMENT ..................................................................................... 16

    A. The Court May Authorize Service by NFT and Website Posting Pursuant to Federal Rule of Civil Procedure 4(f)(3) and Iowa Law ............................................... 20

        1. Recent Cases Are Persuasive that Service of Process by NFT Constitutes Legally Sound Service ...................................... 20

            a. Legal Service of Process by Service Token is Proper in Iowa and Other States .................................................. 20

            b. Legal Service of Process by Service Token is Proper Under FRCP 4(f)(3), as Analyzed by the Southern District of Florida .......................................................... 24

        2. Service of Process by NFT Upon the Foreign Defendants is Not Prohibited by International Agreement ............................................................ 26

        3. Public Policy Favors Granting Plaintiff's Motion ............................... 27

V. CONCLUSION ................................................................................... 28

Case 3:23-cv-03041-CJW-KEM   Document 41   Filed 11/30/23   Page 2 of 29

Plaintiff Michael Bullock through his counsel, pursuant to Local Rule 7(d), submits the following Brief in Support of his Motion for Order Authorizing Alternative Service of Process on Foreign Defendants Pursuant to Rule 4(f)(3), Fed. R. Civ. P.

## I. PROCEDURAL STANCE

Plaintiff filed this action on 19 October 2023. Plaintiff moves this Court to permit him to effectuate service by the only available method reasonably calculated to give Defendants Jessica Doe and John Does I-XX (hereinafter simply "Defendants") actual notice of this action: service on the blockchain by non-fungible token (NFT).

## II. INTRODUCTION

As set forth in Plaintiff's Verified Complaint, Defendants stole cryptocurrency from Plaintiff with an approximate value of $119,000.00 as part of a sophisticated international fraudulent scheme known as a "pig butchering scam." Complaint at ¶ 2.

Defendants have maintained and continue to maintain private cryptocurrency addresses, wallets, and exchange accounts in which all or a portion of Plaintiff's stolen cryptocurrency currently sits. Plaintiff tracked the stolen cryptocurrency to the identified addresses controlled by garnishee cryptocurrency exchanges Binance and Kraken. Verified Complaint at ¶ 49(k).

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order authorizing service of process on Defendants via the electronic transfer of a non-fungible token (NFT) on the Ethereum or Polygon blockchains and via website posting. Alternate service by NFT and by posting on a designated website are appropriate and necessary because Defendants operate their internet cryptocurrency fraud and conversions scheme (1) via the internet and (2) via cryptocurrency (blockchain) technology. Defendants rely on these electronic technologies to carry out their unlawful communications and transfers.

As such, Plaintiff has the ability to contact Defendants directly and provide actual notice of Plaintiff's claims against them electronically via NFT and website posting. Plaintiff respectfully submits that an order allowing service of process and service of all filings via NFT and by website posting will benefit all parties and the Court by ensuring Defendants receive notice of the pendency of this action and allowing this action to move forward. Absent the ability to serve Defendants by NFT and/or website posting, Plaintiff will almost certainly be left without the ability to pursue any legal remedy.

## III.    STATEMENT OF FACTS

### A.  Case Background

Plaintiff is the victim of a now-notorious online scheme called a Sha Zu Pan, a Chinese phrase which translates loosely to a "pig-butchering" scam. Complaint at ¶ 3. Such scams affect Chinese and American citizens.[1] The psychologically and technologically sophisticated scheme is widely believed by authorities and observers to have originated in China, as scammers plagued Chinese consumers before targeting international victims.[2,3]

On or before 1 April 2023, Defendants Jessica Doe and John Does I-XX represented themselves to Plaintiff as "Jessica." *Id.* at ¶ 22 *et seq.* Defendants then commenced months of conversation with Plaintiff, leading him to believe he could trust Jessica Doe. *Id.* Plaintiff, at Defendants' direction, wired money from his Iowa bank accounts to buy U.S. Dollar Coin, an

---

[1] Wang, Fangzhou & Zhou, Xiaoli. (2022). Persuasive Schemes for Financial Exploitation in Online Romance Scam: An Anatomy on Sha Zhu Pan (杀猪盘) in China. *Victims and Offenders*. 18. 10.1080/15564886.2022.2051109 (finding that most victims worldwide are Mandarin-speaking).

[2] *Id.*; *see also* Henry Chambers, Sha Zu Pan Frauds: Tracing Cryptocurrency from Nose to Tail. Asia-Pacific Investigations 2022. *Global Investigations Review*.

[3] See Jia Bai, Unraveling the Pig Butchering Scam (ShaZhuPan). Global Anti-Scam Organization blog dated 18 April 2022 (last accessed on 8 June 2023 at https://www.globalantiscam.org/post/unraveling-the-pig-butchering-scam-shazhupan)

Case 3:23-cv-03041-CJW-KEM    Document 41    Filed 11/30/23    Page 4 of 29

Ethereum-based cryptocurrency. Defendants deceived Plaintiff into transferring that cryptocurrency (119,873.29 USDC) to blockchain addresses controlled solely by Defendants on the false representations that he was sending it to a legitimate cryptocurrency exchange, and that would retain control over his assets, and that Defendants did not control the addresses. Complaint at ¶¶ 28-40; *see also* Affidavit of James Mason Bump at ¶ 14, attached hereto as **Exhibit A**. In reality, the exchange (Zaifint.com) was not legitimate, but controlled by Defendants, who sought to extort additional funds from Plaintiff on the promise to release his funds. Complaint at ¶¶ 41, 46; Bump Affidavit at ¶ 14. After giving Plaintiff step-by-step instructions on how to transfer USDC to their addresses, Defendants then manipulated the Zaifint website to appear as if Plaintiff was successfully executing cryptocurrency trades and earning profits. *See id.*

In all, Plaintiff's cryptocurrency stolen by Defendants was worth more than $119,000.00. Complaint ¶ 43. Immediately after receiving Plaintiff's USDC at their Ethereum addresses, Defendants made a rapid succession of transfers to "shell" addresses – also controlled by Defendants – to mask their identity, confuse efforts to trace the transactions, and disguise the ultimate destination of the stolen funds. Complaint at ¶¶ 108-115; Bump Affidavit at ¶ 13. After learning that he had been scammed, Plaintiff brought this action alleging racketeering, conversion, conspiracy, negligent infliction of emotional distress, fraudulent conveyances, fraudulent misrepresentation, aiding and abetting, declaratory action, and constructive trust. Complaint at ¶¶ 58-138.

Plaintiff's expert, Mr. Bump, successfully conducted forensic tracing of Plaintiff's stolen cryptocurrency, which revealed that the stolen crypto is actually or likely kept in the Scam Addresses and/or at defendant's accounts at the Binance or Kraken exchanges. Bump Affidavit at ¶ 13.

## B. The Virtual Impossibility of Non-Electronic Service

As set forth more fully below, Plaintiff has a reasonable belief that Defendants are foreign. *See* Bump Affidavit at ¶ 14 (setting forth a reasonable basis for the belief that Defendants are Turkish residents). Since filing his Complaint, Plaintiff has made every effort to determine the true identities and locations of Defendants Jessica Doe and John Does I-XX. The conduct of the Defendants constitutes a unique and emerging tort which makes traditional personal service of process challenging, if not impossible, because the tortfeasors took efforts to hide their identities, existing only online while inflicting real-world harm. Plaintiff reasonably believes that Defendants are residents of Turkey. *See* Bump Affidavit at ¶ 14.

In the present case, Defendants communicated with Plaintiff first through conventional phone-to-phone text message and then, minutes later, switched to WhatsApp, an online encrypted messaging platform used in such artifices because of its ability for a user to remain anonymous and delete its messages from the shared chat function. *See* Bump Affidavit at ¶ 14. A phone number is required to create a WhatsApp account, but the phone number used by a digital scammer is likely to be associated with a hacked account or VOIP phone number. *See* Bump Affidavit at ¶ 14. Plaintiff has preserved screenshots of his text, WhatsApp chats, and Telegram chats with Defendants, allowing him to know the phone number used by Defendants. This information, however, will only be useful in discovery, when Plaintiff can subpoena third parties for additional identifiers created by the Defendants when creating and using third party services. See Bump Affidavit at ¶ 14, explaining the challenges of this type of third-party tracing via WhatsApp. Plaintiff believes that extending time for service will not increase the likelihood of serving Defendants conventionally.

Plaintiff has also scoured the internet – including message boards, Google search, scam forums, etc. – and used investigative and data research software in an attempt to identify and locate Defendants. *See* Bump Affidavit at ¶ 14. Plaintiff's efforts have proven unsuccessful because the tortfeasors in this case are unique in that they choose to exist only online and only under fictional identities. Defendants, then, seek to use their digital-only existence as both a sword to harm Plaintiff and a shield to prevent service and obstruct justice.

Plaintiff, therefore, has moved the Court to permit alternative service upon Defendants by means of the same technology – blockchain – which Defendants used to harm Plaintiff. As set forth more fully herein, such alternative service is not only permitted by the law but should be permitted by the Court in the same way U.S. courts have allowed alternate methods of service as new and reliable technology has emerged in recent decades.

**C. The Technology Used in The Tortious Scheme Reveals That Defendants Have Valid Means of Electronic Contact**

In short, blockchain is a ledger (or database) technology. Unlike a traditional database in which all data is stored on one computer or a central server, a blockchain is distributed between the individual participants, or "nodes," of public or private computer networks. Such a ledger is secure and useful because its control is decentralized and each unique activity, or "transaction," on the blockchain requires consensus among nodes. The quality of the data maintained in its records, or "blocks," is maintained by computational trust and the replication of records across a network. Such computations add credentials to each transaction, including through a cryptographic "hash," an algorithmic function used to create a fixed-length identifier assigned to each block, identifying the previous block, a timestamp, and transaction data.

In the case at bar, Defendants made use of a leading blockchain known as Ethereum. Ethereum is a decentralized blockchain that uses its own digital medium of exchange, or cryptocurrency, to facilitate transactions on its blockchain and pay nodes for verifying transactions. One cryptocurrency available on the Ethereum blockchain is called "U.S. Dollar Coin," or USDC. Each cryptocurrency unit is an encrypted string of data used as a medium of exchange. It may also be referred to as a "token;" in short, an entry of data encoded on a blockchain. USDC's value is "pegged," or tied, to the value of the U.S. Dollar, making one USDC worth approximately one U.S. Dollar.

Nearly 1,100,000 transactions occur on the Ethereum blockchain per day.[4] Users can conduct transactions on Ethereum through multiple means, including through third party services; most American consumers interact with Ethereum through services offered by cryptocurrency exchanges such as Coinbase or Crypto.com. When a consumer wishes to purchase USDC, they connect their bank account to a third-party exchange and transfer U.S. Dollars or other "fiat currency" into their exchange account. The consumer can then "trade" U.S. Dollars for the digital currency, USDC.

After obtaining USDC, consumers can "send" this USDC from their exchange account to a third party, whether that third party is a user of the exchange or not. Each Ethereum user has an "address," a unique public identifier consisting of a string of numbers and letters to which cryptocurrency can be sent (e.g. 12345DSM678NDIA), similar to the unique string of letters and numbers that make up an email address (e.g. court@court.gov). To perform a transaction, the

---

[4] Number of Ethereum transactions per day on the blockchain from August 2015 to November 2022, Statista, available online at https://www.statista.com/statistics/730818/average-number-of-ethereum-transactions/ as of 23 June 2023 at 14:54.

sender selects the amount of USDC to send, manually input the recipient's Ethereum address, and pays a fee.

The transaction then occurs via smart contract, a self-executing computer program stored on the Ethereum blockchain which irreversibly executes the requested transaction. After a few seconds, nodes verify the transaction, the USDC arrives in the recipient's address, and the transaction is memorialized on a new public block, along with the following data:

(a) a unique transaction identifier ("transaction hash");

(b) a unique block number;

(c) the sender's Ethereum address;

(d) the recipient's Ethereum address;

(e) a timestamp showing the day, month, and time in UTC (coordinated universal time);

(f) the status of the transactions (i.e., "successful" or "failed");

(g) which tokens were transferred;

(h) the smart contract with which addresses interacted;

(i) the value of the tokens at time of transfer;

(j) the transaction fees;

(k) the "gas" price, or the cost paid to a verifier to verify the newly-created block.

The transaction is visible via online block explorers, such as Etherscan, which operate as a search engine for Ethereum transactions. A blockchain explorer user can input the transaction hash, sender address, or recipient address into the explorer and see each of the above elements of the transaction.

Upon receiving USDC, or any digital token, a user can view their tokens by opening their digital "wallet." A wallet – typically an application designed to function on a common smartphone

such as the iPhone – interacts with the Ethereum blockchain and display the tokens contained in a user's Ethereum address. Many companies, such as MetaMask and Trust Wallet, offer commercially popular wallets (as a service) to view, send, and receive tokens. Wallet users are familiar with, or have guides available to them, explaining how to view tokens in their wallet.

At the Defendants' instruction, Plaintiff made irreversible transactions which sent more than 119,000 USDC (worth more than $119,000.00) to the Defendants' Ethereum addresses, which the Defendants then shuffled through a complex series of other Ethereum shell addresses under their control before finally sending the stolen crypto and the proceeds therefrom to the Defendants' accounts at Binance and Kraken, two legitimate cryptocurrency exchanges. Complaint at ¶ 49. This reflects Defendants' access to – and sophistication with – blockchain technology, cryptocurrency, addresses, wallets, and exchanges. Plaintiff's proposed service token meets Defendants in their preferred, digital terrain.

### 1. The Technology of Non-Fungible Tokens (NFT) as a Method of Service of Process

Plaintiff has moved this Court for service by non-fungible token (NFT), or "Service Token." Unlike cryptocurrency, which are blockchain identifiers fundamentally indistinct from one another and completely interchangeable (hence their usefulness as currency), a non-fungible token ("NFT") is a *unique* digital identifier. A computer programmer proficient in Ethereum's native programming language, Solidity, can create a smart contract to create, or "mint," a non-fungible token that is recorded on the blockchain.

Just as the address in possession of USDC "owns" the USDC, the address containing an NFT owns the NFT. An NFT may entitle its owner to certain real-world rights or simply provide

information in the form of text, a digital image, etc.  The NFT owner can view the token and the information associated with it in three common ways:

(a) Reading the smart contract associated with the token, including to confirm the origin and nature of the token and identify its creator and sender (often with the help of a block explorer such as Etherscan);

(b) Using a wallet, such as MetaMask, that operates as its own application or as a plug-in for common web browsers such as Google Chrome, either through automatic software recognition of the NFT or through manually adding the token and blockchain information into the wallet; or

(c) Connecting their wallet to a decentralized marketplace, such as OpenSea or Rarible, which facilitate easy viewing of NFTs containing digital images and text.

As of 2022, more than 21,000,000 unique users use MetaMask; 1,600,000 use Rarible; and 1,500,000 use OpenSea.  Individuals who configure their own wallets, addresses, and exchange accounts are typically familiar with the above methods of viewing NFTs.  These users access more than 80,000 unique NFT sets containing millions of NFTs on Ethereum.

Plaintiff's smart contract permits service on either the Ethereum blockchain or its close relative, Polygon.  Polygon is a "side chain" of Ethereum which is frequently used to deploy smart contracts and NFTs, including the 2.68 million NFTs currently on its platform.  The network sees more than twice as many daily transactions as Ethereum.[5]  Polygon operates in a highly similar manner to Ethereum, uses the Ethereum network, and connects Ethereum-based projects on the blockchain.  In fact, a user's Polygon address is *identical* to the user's Ethereum address, and

---

[5] Polygon PoS Chain Daily Transactions Chart, highlighting the number of daily transactions per day over a three-year period, spiking at 9.1 million transactions per day in 2021. Last accessed on 8 June 2023 at https://polygonscan.com/chart/tx.

allows the receipt of tokens and its native currency, MATIC. *See* Bump Affidavit at ¶ 13. Because of its affordability, cross-chain interoperability, and scalability, Polygon has become a prominent and highly accessible blockchain, and many wallets (such as MetaMask) automatically load Polygon NFTs or offer users simple steps to view their Polygon NFTs. *Id.* Sophisticated users of Ethereum addresses and cryptocurrency, such as Defendants, will be as familiar with Polygon as they are with Ethereum. *Id.*

Plaintiff's proposed "Service Token" can be minted by a smart contract and deployed on either Polygon, and then sent irreversibly and publicly to the addresses known to have been used by the Defendants in harming Plaintiff. Confirmation of its receipt, and thus proof of service, will be readily and publicly available on the blockchain. As explained in further detail below, the Service Token would contain text and a digital image containing a QR code for the recipient to access documents in this case. Plaintiff has the technical ability and financial resources to serve process upon defendants using such a token. Legal service of process by NFT has been permitted in multiple U.S. courts to date, including the U.S District Court for the Southern District of Iowa, the New York Supreme Court, and the U.S. District Court for the Southern District of Florida.

### 2. The Mechanics of Service by NFT

As explained in the Bump Affidavit, Plaintiff's counsel has developed an Ethereum-based smart contract – containing thousands of lines of code – and deployed it to the Polygon network. *See* Bump Affidavit at ¶ 13. Upon Court order, Plaintiff will use this smart contract to mint a non-fungible token called a Service Token (listed on the Polygon blockchain as a Legal Service of Process, or LSOP, token). *Id.* Once minted, this unique token will be permanently visible on the Polygon blockchain and sent to the cryptocurrency addresses Defendants used in their scheme against Plaintiff. *Id.* The Defendants' Ethereum addresses are identical to their Polygon addresses:

| ADDRESS SHORTHAND | ETHEREUM ADDRESS |
|---|---|
| Scam Address A | 0x5B93AadBd3e507BF2e3a68e8CD760C82fBA541f1 |
| Scam Address B | 0x3aC79DA68CC906240f4C62D7B2bfe64Fb992e22c |
| Scam Address C | 0x5095CBfc0ff59E63745Ea01f5a722f9d7564b4f6 |
| Scam Address D | 0x3CEab17d3Fb1ee10E8424Ca2b649C54a0643ED88 |
| Scam Address E | 0x1EA6c03601BA054441709A4a345AddC05937FD9C |
| Scam Address F | 0xd492e57806c0ABd3F0932205C5BB3086aaE49778 |
| Scam Address G | 0x68b66ce34DA6bF45110E0064F232acbD8e7a5531 |
| Scam Address H | 0x7d7c4ddDF9188D0c170d438d08Eb94370c588630 |
| Scam Address I | 0x9078B13962FBC7d93f624Ab9395d60Ff332A9aF9 |
| Scam Address J | 0xd6d47Fcea370D6fBD78DE05e458BCC5D2d38c390 |
| Scam Address K | 0x25B903719548E94CB58907a0Db4461FfD61DEEb6 |
| Scam Address L | 0x5eA884cAf25A9D2B9fb1033cDD5300BD40c5d223 |
| Scam Address N | 0xce5D11cC48eb1671a6E36829575578d2d4CcA48f |
| Scam Address O | 0xe997bfc0f7A6FD834176B0C92EB845B6696b8d09 |
| Scam Address P | 0xf44edc33a3c96E7e74cE9284A04Db0d8Af7eCA4c |
| Scam Address R | 0x34AA48E296273872649Ef8D3782813fE9a77dc72 |

For purposes of this motion, the proposed token has two components: (1) a name or description and (2) an image. The Service Token contains a Service Hyperlink, a URL which Defendants may use to access the Verified Complaint and other legal documents in this matter via web browser. The token's image, in PNG or JPEG format, contains the following pieces of information:

1. a statement that the defendant has been served as authorized by court order;

2. the case caption;

3. a QR code which Defendants may use to access the Complaint and other legal documents in this matter via smartphone camera;

4. a link which Defendants may use to access the Complaint and other legal documents in this matter via web browser.

The QR code and link redirect to a Google Drive folder containing the Verified Complaint and other service documents via Bitly, a link management platform which records when someone accesses the link. After minting, the service token will automatically be sent to Defendants' Polygon addresses. Defendants will be able to view it in their wallets when they view their transactions on a block scanner, a marketplace, or in NFT-enabled wallets such as MetaMask.

Defendants will be able to learn more about the token itself in the following ways:

### (a) Reading the Contract

Defendants may confirm the nature and origin of the service token by directly downloading or viewing on the Polygon network via a block scanner such as PolygonScan.com. Defendants will see a screen similar to **Exhibit B**, showing an exemplar Service Token (hereinafter "exemplar") minted for purposes of Plaintiff's present Motion.

The block scanner shows the owner of the NFT (the Defendant, or target, address), the address of the smart contract, the creator of the smart contract (Plaintiff), the unique token identifier number (6), the Ethereum standard used to mint the token (ERC-721), and the transaction hash memorializing the minting process. It also shows "activity" related to the NFT. In this example, the NFT only has one entry in the activity log: its minting. If the owner were to transfer the NFT to another address, that transaction would appear in the activity log.

### (b) Using their Wallet or Portfolio Viewer

Defendants may use Metamask or other wallets to view the NFT. When they use or set up their wallets, they have the option of viewing tokens on multiple blockchains, which then can either be automatically detected and viewed on the user's wallet or which can be manually added using the token's unique identifier and contract address. These procedures are familiar to sophisticated users such as Defendants.

Defendants will see a screen similar to **Exhibit C**, which reflects the exemplar as it will appear in the recipient's address if viewed in the MetaMask wallet. **Exhibit C** shows the address' MATIC balance, along with the exemplar NFT named "Legal Service of Process." The Defendant can then click on the token image to view more information (explained below).

### (c) Using Decentralized Marketplaces

Defendants may also use a marketplace, such as OpenSea, to view their NFT. Upon connecting their wallet to the marketplace, they will see a screen similar to **Exhibit D**, which reflects the way the exemplar Service Token appears on the OpenSea. In short, the user can see a clear image of the NFT, the name of the token and its ownership.

Regardless of how the Defendant may choose to access to NFT's image, they will see the required service information displayed as shown in the exemplar. **Exhibit E** shows in greater detail the information contained in the exemplar token: (1) a QR code scannable by smartphone and Service Hyperlink, both of which link to a folder maintained by Plaintiff containing legal documents in this case and (2) an announcement of service; (3) the case caption; and (4) the words "see your case documents here."

### 3. The Mechanics of Service by Website Publication

Plaintiff has also moved the court to permit service by website publication. Plaintiff will install a "button" on the publicly-accessible homepage of Plaintiff counsel's law firm,

www.iowalegal.com, with the text "*Bullock v. Doe*." The button will redirect a website visitor, via the Bitly link, to a Google Drive folder containing the Verified Complaint and service documents.

## IV.   ARGUMENT

Service of process is a fundamental component of the American legal system. It provides to a defendant notice of the commencement of a legal action against them and affords an opportunity to respond. *Henderson v. United States*, 517 U.S. 654, 672 (1996). Traditional service – typically by delivery of a complaint and summons to a defendant in person – remains the preferred method to ensure due process. *See* Fed. R. Civ. P. 4(e)(2)(A). The Federal Rules of Civil Procedure, and most state procedural rules, also provide for methods of service which do not involve hand delivery to a defendant, especially when the plaintiff or their agent believe that a defendant is evading service. *See Fraserside IP LLC v. Letyagin*, 280 F.R.D. 630, 631 (N.D. Iowa 2012) (authorizing service of process by email where plaintiff claimed defendant was evading service). A plaintiff satisfies the requirements of due process when they reasonably ensure delivery, but cannot force a defendant to respond to the action.

Courts have adopted new forms of alternate service as technology has evolved over the centuries. *See* Hon. John G. Browning, *You've Been ... Airdropped? Service Via NFTs as the Next Evolutionary Step*, 9 St. Thomas J. of Complex Litig. 1 at 3-6 (Spring 2023) (relating the arrival of service by publication in 1950, by telex in 1980, by email in the early 2000s, and social media in 2011), attached hereto as **Exhibit F.**

Moreover, a "defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules.

Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party." *In re Int'l Telemedia Associates,* 245 B.R. 713, 722 (N.D. Ga. 2000).

To wit, Rule 4(f) states in pertinent part as follows:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>> . . .
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Unless prohibited by international agreement, Rule 4(f)(3) gives a district court the discretion to order alternate service of process so long as it provides reasonably calculated notice. *Fraserside IP,* 280 F.R.D. at 631 ("Service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant.") *See also Rennenger v. Manley Toy Direct L.L.C.*, No. 10-cv-00400, 10-cv-00401, 2013 WL 12525907, at *8 (S.D. Iowa Dec. 5, 2013); *Brookshire Bros v.*

*Chiquita Brands Int'l, Inc.*, No. 05-CIV21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) ("[D]istrict courts have found broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements.") (citing *Prewitt Enters., Inc. of Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003)); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) (discussing email service); *see also Philip Morris USA, Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412 at *2 (S.D.N.Y. Mar. 12, 2007).

Rule 4(f) was "adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *In re Int'l Telemedia Assoc., Inc.*, 245 B.R. 713 (Bankr. N.D. Ga. 2000). What is appropriate depends upon the unique facts of each case, and whether the method of service contemplated by the plaintiff is reasonably calculated to provide notice. *Fraserside IP*, 280 F.R.D. at 631("the method of service must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The United States Constitution itself dictates only that a method of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Brookshire Bros.* at *1 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also TracFone Wireless, Inc.*, 278 F.R.D. at 692; *Rio Props, Inc.*, 284 F.3d at 1016. Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative

relief under subsection 4(f)(3). *Rio Prosp., Inc.*, <u>284 F.3d at 1114-15</u>; *see also Brookshire Bros.* at \*2 ("[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief.").

When a plaintiff demonstrates a likelihood that the Defendants will receive the notice, the proposed alternate service is constitutional – even if the method is as unconventional as e-mail. *See, e.g., Rio Props., Inc.*, <u>284 F.3d at 1017</u> (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, <u>245 B.R. at 721</u> ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."); *National Association for Stock Car Auto Racing, Inc. v. Does*, <u>584 F. Supp. 2d 824, 826</u> (W.D.N.C. 2008) (in "acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [plaintiff's website].").

Website posting has also been permitted as alternate service. *See, e.g., National Ass'n for Stock Car Auto Racing, Inc.*, <u>584 F. Supp. 2d at 826</u> (citation omitted) (permitting plaintiff to serve John Doe defendants of a preliminary injunction hearing via web posting). Courts have even authorized service by social media posting and messaging platforms, such as Twitter. *See, e.g. In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (S.D.N.Y). S.D.N.Y. (permitting the service of a subpoena in a bankruptcy proceeding because, in part, the public nature of Twitter and the evidence that Defendant used it "could ostensibly provide probative evidence of actual receipt. . . ." ).

In the case at bar, Plaintiff asks the Court to permit service by the new technology of blockchain because the Defendants demonstrate a sophisticated knowledge and use of blockchain as a mechanism of conducting transactions, including those which constituted fraudulent

conveyances designed to defraud plaintiff of his assets and hide their ultimate digital destination (a cryptocurrency exchange).

**A. The Court May Authorize Service via NFT and Website Posting Pursuant to Federal Rule of Civil Procedure 4(f)(3) and Iowa Law.**

**1. Recent Cases Are Persuasive That Service of Process by NFT Constitutes Legally Sound Service.**

Although determinations concerning legal sufficiency of alternate service of process are fact-specific, Plaintiff believes the Court will find instructive three cases filed in 2022 and 2023 in other jurisdictions: a federal trial court in Iowa, a federal trial court in Florida, and a state trial court in New York. Plaintiff respectfully urges the Court to consider these cases and adopt similar reasoning in granting Plaintiff's motion for alternate service by means of a Service Token and website publication.

**a. Legal Service of Process by Service Token is Proper in Iowa and Other States.**

Iowa's rule for alternate methods of service identifies: "Service may be made … in any manner consistent with due process of law prescribed by order of the court in which the action is brought." Iowa R. Civ. P. 1.306, 1.30514) ("If service cannot be made by any of the methods provided by this rule, any defendant may be served as provided by court order, consistent with due process of law."). Iowa's rule for service, generally, does not specifically prohibit service by emerging methods such as email, social media, or NFT. *Maharishi Foundation USA, Inc. v. Love*, No. 16-cv-52, 2016 WL 11606685, at *2 (S.D. Iowa Sept. 19, 2016) (noting it "does not specifically prohibit it, indicating where a defendant cannot be personally served, courts are authorized to make orders for service that meet due process concerns.").

In *Maharishi Foundation,* the Southern District of Iwa authorized electronic service on an out-of-state defendant where "counsel has detailed at length the efforts undertaken to find an address in California at which Love can be served but none of those efforts have been successful." *Id.*, at 2016 WL 11606685, at *1. *Maharishi* had, however, found that the defendant "maintained an active social media presence … operating a YouTube channel titled Positive Magazine … a Facebook page… a Google+ Page … and a website." *Id.* The plaintiff also provided hyperlink addresses to each of those pages, channels and/or websites. *Id.*

After addressing the interplay between federal and Iowa service rules, collecting cases regarding service of process via email and social networking accounts, and finding service by publication under Iowa law was not authorized, the Court approved the following method of service:

> Pursuant to Fed. R. Civ. P. 4(e)(1) and Iowa R. Civ. P. 1.305 (14), the Court authorizes service by the following method: Plaintiff is to send a digital copy of the summons and complaint and a copy of this order to defendant Love via the email link to positivemagazine@gmail.com and via private message through the Facebook link www.facebook.com/pages/Positive-Magazine/58656124534. Once service has been sent by these means, plaintiff should file an affidavit advising of the date and time it sent the digital copies of summons and complaint and confirming the addresses/links to which they were sent.

*Id.* at *2.

As this is a matter of first impression among courts in the Northern District of Iowa, analysis from a neighboring federal court is similarly helpful. In *Hoop v. Doe*, the Plaintiff moved to serve alleged pig-butchering scammers via NFT (with a QR code) and website posting. The court authorized such service, reasoning that it was "reasonably calculated to reach" the defendants. Order at 11-12, *Hoop v. Doe et al.*, Case No. 4:23-cv-00185-SMR-HCA (S.D. Iowa Sep. 6, 2023) (attached to this Brief as **Exhibit G**).

Similar analysis from state trial courts is insightful, including a leading case from New York. In *LCX AG v. John Does 1-25 and 1.247m U.S. Dollar Coin*, a cryptocurrency exchange sued in the New York Supreme Court defendants of unknown citizenship for alleged conversion of a more than $1,250,000 of a cryptocurrency called United States Dollar Coin (USDC) by means of a vulnerability in the plaintiff's computer code. *LCX AG*, 2022 WL 3585277 at **1. The "Hacker Defendants," who were identifiable only through their Ethereum address, transferred the stolen assets to a third-party cryptocurrency exchange. *Id.* at **1-2.

After preliminarily enjoining the Hacker Defendants from disposing of the stolen funds and directing the third-party cryptocurrency exchange to deny the Address access to the exchange's functions, a New York trial court then issued an Order to Show Cause. The Order directed the plaintiff to serve upon the Hacker Defendants a copy of the "Order to Show Cause, along with a copy of the papers upon which it is based" on a date certain upon "the persons controlling the Address via a special-purpose Ethereum-based token (the Service Token) delivered – airdropped – into the Address." Order to Show Cause at 2 (2 June 2022), attached as **Exhibit H.**

The Court further directed the plaintiff to include with the token a "Service Hyperlink," a Uniform Resource Locator (URL) by which the persons controlling the Address could access the required service documents, which would be published by the plaintiff on a website. The URL would make use of a mechanism to discover when a person clicks on the Service Hyperlink. The Court concluded that "[s]uch service shall constitute sufficient service for the purposes of jurisdiction under NY law on the person or persons controlling the Address." *Id.* at 2. After sending the Service Token to the Address, the plaintiff moved to "confirm" that alternate service by token constituted "good service." Finding the matter one of first impression in the State of New

York, the Court made substantial written findings. *LCX AG v. John Does 1-25 and 1.274M U.S. Dollar Coin*, 2022 N.Y. Slip Op. 32834 at *2 (N.Y. Sup. Ct. 2022), attached as **Exhibit I.**

The *LCX* case was significantly more complex than the case at bar because the *LCX* hacker defendants used a "mixer," an Ethereum protocol which mixes assets from multiple addresses to obfuscate the input and output addresses, and to make outgoing funds appear legitimate. This allowed plaintiff to establish that it was impossible for it to serve the Doe defendants by any method laid set forth under New York civil procedure. The Court held, however, that alternate service was permissible because CPLR 308(5) permits service of process "in such a manner as the court, upon motion without notice, directs, if service is impracticable." *Id.* at *6.

Reasoning that "recent alternate service methods using social platforms and technology are designed for such service where defendants' identity is known, but their location remains a mystery," a plaintiff "need not know the defendants' physical location." *Id.* at *6. In support, the Court cited two cases from 2002 and 2008 in which a Court permitted service by email when plaintiff had shown that email was exclusively or regularly used by the defendant. Citing cases from 2015 and 2022, the Court pointed to instances of court-approved service by Facebook Messenger, WhatsApp and Twitter.

Explaining further, the court wrote that "due process requires that the method of service be reasonably calculated, under all of the circumstances, to apprise the defendant of the action." *Id.* at *6 (internal citations and quotations omitted). Furthermore, a "court has broad discretion to fashion the means of the alternate service adapted to the particular facts of the case before it." *Id.* at *6 (internal citations and quotations omitted). Such service is "not a guarantee of notice to the intended recipient." *Id.* at *6. (citing *Dobin v. Chapman*, 21 N.Y.2d 490, 500 (1968)).

In holding that the Service Token satisfied CPLR 308(5), the Court stated that, "alternate service is especially necessary because of the anonymity of Doe Defendants." *Id*. at *6. It remarked that "airdrops are used as a marketing device," suggesting that cryptocurrency address users are familiar with tokens as a common means of communication. *Id*. at *8 at n.7. Indeed, many cryptocurrency wallets such as Metamask are designed to facilitate the user's ease-of-viewing of tokens delivered to their address. Most persuasively, "communication through the account using the Service Token is effectively the digital terrain favored by the Doe Defendants" and using a blockchain transaction to communicate with a Doe defendant is therefore fair. *See id*. at *8.

### b. Legal Service of Process is Proper Under **FRCP 4(f)(3)**, as Analyzed by the Southern District of Florida.

Federal courts are permitted to authorize service by evolving methods, such as email. While "[a]uthorizing service by email certainly is not traditional . . . it does not appear that such service has been unequivocally prohibited by any court." *Fraserside IP LLC v. Letyagin*, 280 F.R.D. 630, 631 (N.D. Iowa 2012). In *Fraserside*, "the court authorize[d] service on the defendant in the following manner … by email to … the attorneys who represented the defendant in pre-lawsuit negotiations with plaintiff, at the email address used by the attorneys during the negotiations… and also by email addressed to the defendant at the two email addresses used by the defendant to communicate with the plaintiff." *Id*.

In deciding whether to do so, the *Fraserside* court applied "the standard rules," which limits the options to "a method of service that fulfills due process requirements." *Id*. Thus, the method of service permitted by the Court "must be reasonably calculated, under all circumstances,

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

At least one federal district court in Florida has permitted service by NFT, including in one matter with facts similar to the case at bar. In *Bandyopadhyay v. Defendant 1 and John Does 1-20*, a Florida resident sued in the Southern District of Florida unknown defendants of suspected Chinese citizenship, one of whom held herself out as "Sasha." **Exhibit J.** The Complaint alleged that Sasha and her fellow defendants successfully conspired to steal approximately $958,648.41 worth of cryptocurrency from the plaintiff. *Id.* at *1. In short, plaintiff alleged that the defendants coordinated in a sophisticated, global internet-enabled cryptocurrency fraud and conversion scheme to defraud, and then steal, from plaintiff in a manner that constituted racketeering in violation of 18 U.S.C. § 1964, and that the defendants used the proceeds in the establishment or operation of a RICO enterprise.

The defendants perpetrated the alleged theft by means of an online interface designed to mimic a liquidity mining platform. While a legitimate liquidity pool would have rewarded plaintiff with cryptocurrency in exchange for providing the liquidity necessary for an efficient operation of a particular blockchain network, the Defendants deceived the plaintiff into "investing" in their fraudulent platform and then, while posing as technical support staff for a legitimate cryptocurrency exchange, deceived plaintiff into disclosing information which allowed them to seize the cryptocurrency which the plaintiff held in a digital wallet on that legitimate exchange.

In the days after filing his lawsuit, the plaintiff engaged in unsuccessful attempts to identify methods of serving the defendants, and represented to the court that the only known identifier for the defendants were the cryptocurrency addresses the defendants used in their fraudulent scheme.

The plaintiff then moved for an order permitting alternate service, proposing to serve the defendant by Service Token and a specially-created website.

In granting the motion, the court found that such service of process is neither a violation of the Hague convention nor barred by the Federal Rules of Civil Procedure, specifically 4(f)(4). Relying in part on the *LCX* decision, the Court specifically found that "NFT and posting on a designated website are reasonably calculated to give notice" and cited multiple cases in support of similar service by email and website publication. *Bandyopadhyay v. Obei*, 22-cv-22907-BLOOM/Otazo-Reyes (S.D. Fla. Nov. 23, 2022) (Citing as examples *Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. Apr. 29, 2010) (authorizing service by e-mail); *Bialik v. Individuals Identified on Schedule "A,"* No. 22-cv-6142- BLOOM/Valle, 2022 WL 4268594, at *2 (S.D. Fla. Sept. 15, 2022) (same); *Chanel, Inc. v. Individual, P'ship, or Unincorporated Assoc.*, No. 17-6241-CIV-MOORE, 2017 WL 8794733, at *4-5 (S.D. Fla. Dec. 13, 2017) (permitting service by website publication); *Cassegrain v. Bagsoutlet.us*, No. 18-cv-62933-BLOOM/Valle, 2018 WL 10582119, at *1-2 (S.D. Fla. Dec. 7, 2018) (same)). Reasoning that the alleged scheme used electronic means including blockchain technology and internet networks and was therefore "likely to reach [the] Defendants," the Court found that plaintiff had demonstrated "good cause as to why leave should be granted to allow service of summonses, complaint, all filings, and discovery in this case on Defendants via NFT."

In the case at bar, service by NFT and website posting is the most reliable means to provide Defendants notice of this action. In his Verified Complaint, Plaintiff has alleged in detail wrongdoing via transaction records and sufficiently authenticated the method of harmful conduct by Defendants. Plaintiff has no reasonable alternative means of service, as he knows no real name, physical address, employer name, useful phone number, email address, or other identifier except

that of the Defendants' Ethereum and Polygon addresses. Moreover, these methods are consummately fair, as Defendants themselves chose the terrain of Ethereum and blockchain to commit their crimes and torts.

### 2. Service of Process via NFT Upon the Foreign Defendants is Not Prohibited by International Agreement.

In *Bandyopadhyay*, the District Court directly addressed the question of permissibility of service by NFT and website publication under international agreement, finding:

> Service by transfer of NFT and via posting on a designated site is not prohibited under international agreement. Although the United States and China are signatories to the Hague Convention on the Service Abroad of Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Convention), the Hague Convention does not specifically preclude service of process via NFT or by posting on a designated website.

> Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as email or website posting. *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-20590-CIV, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2014) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the specific forms of service objected to). A court acting under Rule 4(f)(3), therefore, remains free to order alternative means of service where a signatory nation has no expressly objected to those means. *See Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011). China has not specifically objected to service by NFT or posting on a website.

*Bandyopadhyay*, 2022 WL 17176849, at *2.

Similarly, in the case at bar, Plaintiff has reasonable basis to believe the Defendants are Turkish nationals. that Hague Convention poses no barrier to service by NFT and website publication on foreign defendants Jessica Doe and John Does I-XX.

### 3. Public Policy Favors Granting Plaintiff's Motion

Plaintiff has suffered harm through the abuse of the novel technology of blockchain, weaponized against him by Defendants whose identities exist only on the blockchain of their

choice. Defendants who engage in illegal and tortious conduct depend upon the law not adopting mechanisms to address such harms, thereby providing no meaningful access to justice for victims of these "frontier torts."

Not only is service by NFT and website publication just and fair due process, it is consistent with the public policy aims of the United States (and the State of Iowa) to permit victims to pursue justice against domestic and foreign financial predators. According to the FBI, internet scams cost American citizens more than $27 billion between 2018 and 2022[6]. Online scams involving cryptocurrency – including the "pig-butchering scam" used against plaintiff – are an emerging mass tort affecting more than 31,000 Americans per year[7], including nearly $3,000 in the State of Iowa who lost over $42 million in 2022 alone (reported losses only).[8,9] Any other tort occurring at such a rate would be widely prosecuted, but for the technological sophistication of the mechanism of harm and the Defendants' efforts to hide from justice. It is in the public interest to allow Plaintiff to pursue justice at this initial stage of his case and in the best manner afforded to him: service by NFT.

## V. CONCLUSION

Service by NFT is the appropriate tool to permit victims of digital torts to digitally serve Defendants when no other form of service is more reasonably calculated to provide notice of this action. Plaintiff has provided evidence of alleged wrongdoing by Defendants and sufficiently authenticated the method of communication, essentially creating a method of publicly verifiable proof of service on the blockchain. Plaintiff's proposed method of service by NFT will provide

---

[6] Federal Bureau of Investigation, 2022 Internet Crime Report at p.7 (last accessed on 8 June 2023 at https://www.ic3.gov/Media/PDF/AnnualReport/2022_IC3Report.pdf).
[7] *Id.* at 21.
[8] *Id.* at 25.
[9] *Id.* at 26.

Defendants easy access to the Verified Complaint and service documents by hyperlink as well as a QR code in the token's image – an added method of disclosure unique to Plaintiff's Service Token and not found in the court-approved *LCX* or *Bandyopadhyay* service tokens. For the reasons stated in his Motion and Brief, Plaintiff respectfully requests the Court enter an Order permitting him to serve Defendants by NFT and website publication.

DATED: 29 November 2023

Respectfully submitted,

HARDING LAW OFFICES

*/s/ Joseph R. Casey*
Joseph R. Casey, Esq. (AT0014276)
1217 Army Post Road
Des Moines, Iowa 50315-5596
Telephone: (515) 287-1454
Facsimile: (515) 287-1442
joe@iowalegal.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on 29 November 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent through the electronic document management system to all parties who are registered filers.