# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

MICHAEL ALLEN BULLOCK,

        Plaintiff,

vs.

JESSICA DOE, et al.,

        Defendants.

Case No. 23-CV-3041-CJW-KEM

**ORDER**

---

Currently pending is Plaintiff Michael Allen Bullock's motion to serve third-party subpoenas prior to the Rule 26(f) scheduling conference. Doc. 51. I **GRANT** the motion in part and **DENY** the motion in part.

Federal Rule of Civil Procedure 26(d)(1) provides: "A party may not seek discovery from any source before the parties have conferred as required [for the scheduling conference], except in a proceeding exempted from initial disclosure . . . or when authorized by these rules, by stipulation, or by court order." The majority of courts apply a good cause standard when determining whether to allow early discovery.[1] Relevant factors include "(1) [w]hether the plaintiff has demonstrated a prima facie claim of actionable harm; (2) [t]he specificity of the discovery requests; (3) [t]he need for the subpoenaed information to advance the claim; (4) [w]hether there are alternative means to obtain the subpoenaed information; and (5) [t]he objecting party's right of privacy."[2]

---

[1] ***Dorrah v. United States***, 282 F.R.D. 442, 445 (N.D. Iowa 2012).

[2] ***Paisley Park Enters., Inc. v. Ziani***, No. 18-cv-2556 (DSD/TNL), 2018 WL 6567828, at *3 (D. Minn. Dec. 13, 2018) (quoting ***Arista Records, LLC v. Doe 3***, 604 F.3d 110, 119 (2d Cir. 2010)); *see also* ***Minnetonka Moccasin Co. v. Does***, No. 22-cv-87 (PJS/TNL), 2022 WL 1055746, at *3 (D. Minn. Apr. 8, 2022) (additionally considering whether a preliminary injunction was pending or requested and "how far in advance of the typical discovery process

Here, Bullock's complaint alleges that Defendants engaged in a sophisticated scheme to defraud him of more than one hundred thousand dollars while hiding their identities. Doc. 3. Bullock alleges that someone using a fake identity added him as a friend on Facebook, and they built a relationship messaging over several months on Facebook and WhatsApp; the only information Bullock has about this person's identity is the T-Mobile phone number tied to the WhatsApp account. Eventually, this person convinced Bullock to buy Ether, a cryptocurrency, and invest it in a new cryptocurrency that had a website hosted by GoDaddy and was available on the Apple App Store. The complaint alleges that in actuality, the new cryptocurrency was fake, and Bullock's invested Ether was ultimately transferred to Kraken accounts belonging to the scammers, where it was exchanged for U.S. dollars (or other government currency) (as shown on the block chain for Ether).

These allegations establish good cause for early discovery to identify the Doe Defendants. Bullock's complaint raises a colorable claim; the case is unable to proceed until Bullock ascertains the identity of the Doe Defendants; and Bullock has no way to ascertain the Doe Defendants identities' outside of the discovery process. Courts have upheld early discovery under similar circumstances, as long as the subpoenas are narrowly tailored to "only seek[] evidence related to the identity of" the Doe Defendants.[3] A person has a "minimal" expectation of "privacy in their contact information disclosed to an internet service provider," and this privacy interest is outweighed by Bullock's need for the information to obtain relief.[4]

---

the request was made" (quoting *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 889 (D. Minn. 2021))).

[3] *Minnetonka Moccasin*, 2022 WL 1055746, at *3 (quoting *NCS Pearson, Inc. v. Doe*, No. 20-cv-594 (SRN/ECW), 2020 WL 6581122, at *7 (D. Minn. Nov. 10, 2020)); *see also Jacobo v. Doe*, No. 1:22-cv00672-DAD-BAK (BAM), 2022 WL 2079766, at *4 (E.D. Cal. June 9, 2022).

[4] *Minnetonka Moccasin*, 2022 WL 1055746, at *6.

Courts (including Bullock's cited authorities) have narrowed requests that go "beyond merely seeking information regarding the identity of the John Does."[5] Here, Bullock's proposed subpoenas are incredibly broad, seeking (for example) geolocation data for the cell phone number at issue; a log of all incoming and outgoing phone calls and text messages (but not the content of the text messages) for the phone number at issue; all GoDaddy customer-service communications for the fake cryptocurrency website; and a log of all deposits, trades, and withdrawals for the Kraken accounts belonging to the scammers. Bullock's proposed subpoenas go beyond obtaining identifying information and implicate heightened privacy concerns; while he may be entitled to such information later on, the court will not authorize these broad subpoenas on an ex parte basis. In addition, a treatise Bullock himself cites states that a civil subpoena may compel an internet service provider to disclose "basic subscriber records" without violating the Stored Communications Act, such as "user name, true name, physical address, IP address, and session records," but a government search warrant is required for "time-stamped logs of communications without content, geo-location data, device identifying information, account settings and file download metrics."[6] Bullock's proposed subpoenas request this latter type of information.

Accordingly, in the absence of caselaw from Bullock establishing that he may obtain early discovery for some of his specific requests, the court narrows the subpoenas as set out below to include only the following information associated with the accounts: names, addresses (physical and email), phone numbers, dates of birth, proof of identity and address, and IP addresses and their dates and times of access[7]:

---

[5] *Id.* at *3 (quoting *NCS Pearson*, 2020 WL 6581122, at *5).

[6] **1** Tyler G. Newby, ***Data Sec. & Privacy Law*** **§ 9:35** (Nov. 2023 update) (Westlaw).

[7] *See **Uber Techs., Inc. v. Doe***, No. C 15-00908 LB, 2015 WL 1205167, at *1, *4 (N.D. Cal. Mar. 16, 2015) (when plaintiff alleged that unknown person from specified IP address downloaded proprietary information and also visited two pages on a third-party website hosting plaintiff's source code, authorizing early discovery of all IP addresses that viewed, accessed, or

a. **T-Mobile USA, Inc. Subpoena**

For the phone number [redacted] for the period of time between 1 April 2023 and 19 October 2023~~, all information including but not limited to~~:

1. Subscriber information for the above-listed number~~, including~~[to include] financially responsible party~~,~~ [and ]billing address~~, features, services, and equipment~~.

~~2. All call originations, call terminations, call attempts, and voice and text message transactions, LTE and/or IP sessions and destinations with cell site information, including the originating and receiving numbers or network IDs for all incoming and outgoing all transactions, data transactions, and push to talk sessions, but not including the content of any communications.~~

~~3. Records are to include the IMEI, IMSI, or other equipment or handset identification information for the target phone number if known.~~

~~4. Beginning and ending switch and cell site / tower identifiers for each call, SMS MMS and data transmission, including the location information and azimuth for the tower and sector used for the call.~~

~~5. An explanation of how to read the call detail records.~~

b. **Meta Platforms, Inc. Subpoena**

For any and all Facebook and WhatsApp accounts connected to phone number [redacted] for the period of time between 1 April 2023 and 19 October 2023~~, all information including but not limited to~~:

---

modified the pages on the third-party website and the dates and times of such access); *Liberty Media Holdings, LLC v. Letyagin*, No. 2:12-cv-00923-LRH-GWF, 2012 WL 3135671, at *2, *5 (D. Nev. Aug. 1, 2012) (authorizing early discovery of "IP addresses and dates and times of logins" that allegedly uploaded plaintiff's copyrighted work, noting that after obtaining the IP addresses, plaintiff would identify infringers by serving subpoena on internet service providers for the subscriber information associated with those IP addresses).

1. User and subscriber information for the above-listed number, including financially responsible party, [and ]billing address, ~~features, services, and devices used~~.

2. A log showing the IP addresses, dates, and times from which the account user(s) accessed any and all Facebook and WhatsApp features or services.

3. An explanation of how to read the records produced.

**c. GoDaddy.com, LLC Subpoena**

For the domain name Zaifint.com hosted and/or supported by GoDaddy.com between 1 April 2023 and 15 January 2023:

1. Any and all registration agreements with the domain name.

2. Name, telephone number, physical address, financially responsible party identifiers, and electronic mail address of the person(s) and/or entities listed or known to be registrants of the above-noted domain name.

~~3. Listing of any and all status changes associated with the domain name listed above, including any and all documents regarding status changes; and~~

~~4. Copies of any and all customer service records, e.g. notes of telephone conversations, notes, emails, and other related to the domain name.~~

**d. Payward Ventures, Inc. Subpoena**

For any and all Kraken customer accounts which, as of 25 October 2023, have ever received cryptocurrency from Ethereum address [redacted] (a/k/a "Scam Address L"):

1. Complete Know Your Customer (KYC) information – including but not limited to legal names and aliases; dates of birth; government-issued identification card including passport, driver's license, and other photo

5

identity cards; proof of address; proof of address such as utility bills; and source of funds information – for each customer associated with each of the above-referenced accounts.

2. Financially responsible party information, including mailing address, residential address, billing address, ultimate beneficial owner identities

3. Transaction logs – including but not limited to all purchases, exchanges, trades, deposits, and withdrawals, or redemptions including swaps between fiat and cryptocurrency – for all of the above referenced accounts for the above specified dates.

4. A ledger of past and current balances (reflecting USD and all cryptocurrencies and any other digital assets) of the above referenced accounts.

5. Information identifying which Financial Accounts and Designated Financial Institutions (as defined by Kraken's Terms of Service as of 15 January 2024) which have been (or currently are) linked to the above-referenced customer accounts.

6. If any identified accounts have been terminated or suspended, provide the date of termination/suspension and an explanation of the reason for termination/suspension.

**e. Apple Inc. Subpoena**

For the iOS application available on the Apple App Store from approximately 1 April 2023 to 19 October 2023 with the title "Zaif INT" published by "ArdaA Eskici," all information including but not limited to:

1. Developer name, Developer Apple ID, Bundle ID, email address, phone number and billing address.

2. Primary language of the application.

3. A log showing the login sessions and IP addresses of the Developer on the dates the Developer created its Apple ID and first successfully

6

published the application;

~~4. The dates the application was available on the Apple App store; and~~

~~5. A description of whether the application was withdrawn from the App store or suspended by Apple.~~

The court **GRANTS IN PARTS AND DENIES IN PART** the motion for early discovery (Doc. 51). Early discovery to obtain identifying information of the John Doe Defendants is warranted, and the subpoenas may issue as modified above.

**SO ORDERED** on January 29, 2024.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa